Caldwell, J.
The complainant is one of the creditors of Chester Walbridge, and has filed his bill, for the purpose of subjecting certain equities, which he alleges said Walbridge holds, to the payment of his claim. The facts necessary to an understanding of the case are these:
On the 21st of July, 1837, the complainant recovered judgment, in the common pleas of Lucas county, against Chester Walbridge, for $775.66. It does not appear that any execution was ever issued on this judgment. At the July term, 1839, of the circuit court of the United States, for the district of Ohio, Marvin and McNulty, two of the defendants in this case, recovered a judgment against Chester Walbridge and Heman Walbridge, for $1,631.43, and on the 9th of October, 1839, *412 they filed- a bill, in the court of common pleas of Lucas county, against the Walbridges and others, to subject lots Nos. 582, 461, 462, 463 and 464, in the city of Toledo, to the payment of their judgment. At the April term, 1845, they obtained a decree for $2,186.11, finding the equitable title to these lots to be in Chester Walbridge, and ordering them to be sold to pay the decree.
At the same term of the court, James Graham obtained a similar decree, subjecting the same property. In October, 1842, Chester Walbridge applied for the benefit of the bankrupt law, and in September, 1843, received his final discharge. The bill sets forth these facts, alleging that these lots, as well as divers other tracts of land in Ottowa county, in this state, and a tract of land in Pennsylvania, and other property, is held in trust by others for Chester Walbridge. The bill also alleges that Chester Walbridge obtained his certificate by fraud; that, although he was the equitable owner of this property, he did not present it in his schedule of assets. The prayer of the bill is, that, after paying off any prior liens, the property may be subjected to the payment of complainant’s judgment.
The defendant Chester Walbridge, has plead his discharge in bankruptcy, and denies all fraud in obtaining such discharge, and disclaims all interest in the property, at the time, and all fraud of every kind. It will be perceived that the judgment of the complainant is now dormant, no execution, as appears from the record, ever having been issued on it. It is contended on the part of defendants, that complainant cannot come into a court of chancery on a dormant judgment, but that he must revive by scire facias. Whatever might be the proper •course of procedure in a case differently situated, in a case like the present, where the only remedy to be had is against equities, that can only be subjected through the aid of a court of chancery, and where, before these can be reached, the certificate of bankruptcy, which otherwise would be a complete bar to the action, must be set aside for fraud, we think the aid of a court of chancery may be properly invoked in the first instance.
*413 The great question in the case is one of fraud, which has to be established before the complainant can proceed one step in his cause, and comes within the original powers of a court of chancery. The defendant can make every defense in this proceeding that he could on scire facias to revive the judgment. It is also contended on the part of the defense, that this suit 'should have been brought in the name of the assignee in bankruptcy. Now, if the complainant claimed by virtue of the proceedings in bankruptcy, there would be great force in the suggestion that the creditors should proceed in the name of the assignee. But in this instance, the creditor proceeds in derogation of the proceedings in bankruptcy. All that we know of the proceedings, on the defendant’s application for the benefit of the bankrupt law, is, that an assignee was appointed. It nowhere appears that any effects came into his hands. None of the creditors before the court in this case, proved their claims under the bankrupt law; the assignee sets up no claim to control the matter, so far as appears; nor have we any evidence that now or at the filing of this bill, there was any assignee acting in the matter.
In the case of Sands et al. v. Cadwise et al., (4 Johns. Rep. 601,) which was a case under the first bankrupt law, the court say, that if an assignee refuse to file a bill, any creditor may do it. In that case, the assignee refused to file the bill, but claimed the right to control the effects. That case is, in many respects, not analogous to the present; but it is an authority going to show that, if the general rule be as contended by counsel for the defense, that the assignee should bring the suit, there are exceptions to it; and that, where the creditor cannot have his remedy through the assignee, he can, in a proper case, proceed in his own name. Indeed, if the assignee could alone bring the suit, the creditor, in many instances, would be deprived of all remedy. The present case will illustrate this.
The bankrupt law provides that all suits must be brought, by the assignee, within two years from the issuing of the certificate of discharge to the bankrupt, or after the cause of suit shall have *414 first accrued. Chester Walbridge received his certificate of discharge in September, 1843. The bill in this case was filed in June, 1845, two months before the expiration of the two years. If it were held that the assignee could alone bring the suit, and the bill, on that account, should be dismissed, the complainant would be without remedy, the time having long since passed in which the assignee could bring suit. To establish such a rule would subject creditors to the limitation of two years, provided in the bankrupt act, which we think should not be •done in a case where the certificate was obtained in fraud of the law, and therefore void.
Under all the circumstances of this case, we think the complainant might with propriety proceed in his own name. The next question that arises in the case is, whether the equity in the property sought to be subjected in this proceeding, was in Chester Walbridge at the time of his proceedings in bankruptcy ?
The defendants in whom the legal title to all this property was placed, are in default for answer, and a decree pro confesso has been taken against them in the court of common pleas, from which they have not appealed. Hiram Walbridge, the .son of the defendant Chester, states that his father went into possession of lots No. 461, 462, 463 and 464, in 1834, and that he went into possession of lot 532 in 1837, and that he remained in possession until 1845, when they were taken pos.session of by the receiver. He says these lots in Toledo were purchased from Stickney and Bissell, and were conveyed to Henry S. Walbridge. He says he always supposed this conveyance was made to Henry S. Walbridge with the approbation of Chester. He states that Chester paid for the lots — that he told him that he got the money from Kidder, and that he knows of his getting money from Kidder.
He says that lot No. 532 was conveyed to him in 1842, by Henry S. Walbridge; that Chester retained the deed in his possession, and never delivered it to him, and that afterwards, by the direction of Chester, he returned the deed to Henry S Walbridge.
*415 The two small tracts of land in OttoWa county he says were conveyed to him in 1842. The larger tract of land was paid for by Chester Walbridge, and conveyed by his direction to a man by the name of Berdan, and he understood from both parties, that Berdan held the land for Chester Walbridge.
Berdan died in 1841. A day or two before his death he conveyed this property to Hiram Walbridge. Edson Allen states that Berdan frequently told him that the property was conveyed to him without his knowledge or consent, and expressed an anxiety to get clear of it, thinking there was something wrong in the conveyance. All the testimony shows that Chester Walbridge, up to 1845, when the property went into the hands of a receiver, used the property as his own, occupying a part, and receiving rents for the balance. From this and the other evidence and facts connected with the case, we think there is no doubt that the equitable interest in this property, at .the time he took the benefit of the bankrupt law, was in Chester Walbridge. Objection is taken to the testimony of Hiram Walbridge. It is said he is not a competent witness against his co-defendants. So far as his co-defendants.are concerned, we think they cannot object to his competency as a witness. The. title to a large part of the property is in him, and he is swearing directly against his own interest, and he has no interest against them. The interest of Henry S. Walbridge and Hiram Walbridge, .who hold the legal title to all this property, is not now before the court, they both having permitted a decree against them in the court below, by default from which they have not appealed.
We are of opinion that complainant is entitled to have this property subjected to the payment of his debt, subject to the prior incumbrances. Another question in the case arises between the different incumbrances in reference to the claim of Marvin and McNulty. As above stated, they recovered their judgment in 1889; and obtained their decree subjecting those lots in Toledo to the payment of it in 1845. John Fitch, Esq., *416 was their attorney, in recovering the judgment and obtaining the decree.
Shortly after the decree was obtained in 1845, and as it appears before Marvin and McNulty knew anything of it, Mr. Dorr was in New York, the residence of Marvin and McNulty* and proposed to them the purchase of their claim. They refused to sell, and he then proposed to collect it for them. They gave him a letter to Fitch, their attorney, authorizing him, if he should think it advisable, to give Dorr one half of the claim for collecting it. Dorr did. not show this letter to Fitch, but some months afterwards, claiming to have power to sell the judgment, he and Hiram Walbridge entered into an agreement that Hiram should pay two hundred dollars for the decree. The parties met, and when Dorr was asked for his authority, he presented the letter to Fitch authorizing him to make a contract with Dorr for the collection of the decree.
Dorr said that Marvin would agree to the arrangement, and Fitch, as the attorney of Marvin and McNulty, made the assignment and received the two hundred dollars. The assignment was made to the defendant, William J. Daniels. Daniels claims the decree by virtue of this sale. The complainant claims that Hiram Walbridge being one of the parties liable on this decree, by his purchase of it, it thereby became satisfied. Marvin and McNulty claim that they are still the owners of the decree, never having given any authority for the transfer of it, and never having ratified it in any way. Now it is evident from the testimony of Fitch and Dorr, that Marvin and McNulty had given no authority whatever for the sale of this claim. They appear, from the whole circumstances of the transaction, to have been, at the time Dorr visited them in New York, ignorant of the situation of their claim or that a decree had been taken; and it appears that they were not informed of the sale after it took place. Indeed it cannot, for a moment, be supposed that they, if they had known anything about its situation, would have sold a claim of over $2100, amply secured on real estate by decree, for two hundred dollars. Fitch says he acted, in *417 making the transfer, without any authority except his general authority as their attorney, to collect the claim. We suppose,, that, as attorney at law, he was not clothed with any such power, and that he could not sell the claim without express authority to that effect. An attorney is presumed to be employed on account of his professional skill, to attend to such matters, as come within the range of his professional duties; his business, is to collect claims that are put in his hands, not to trade on-' them. In 10 Johns. Rep. 220, it is held, that the power of an attorney after judgment or decree, extends only to issuing execution and receiving the debt. This, we think, is the true rule. The transfer then is void, and Marvin and McNulty must still be considered as holding the decree.
The complainant, then, will take his decree for the sale of' the real property in Toledo and Ottowa county, and the appropriation of it to the payment of his claim, subject to the decrees of Marvin and McNulty and Graham, which are prior and equal liens on the Toledo property.
The Pennsylvania property being without the jurisdiction of this court, we will make no decree in reference to it. The-bill, so far as this property and the other claims are concerned,, will be dismissed.