### MINNIE C. CHAMBERS v. CLEVELAND & S. W. TRAC. CO.

1. ESTOPPEL AS TO MAIN TRACK NOT NECESSARILY EXTENDED TO SWITCHES.

   An estoppel arising against an abutting property owner to object to the existence of the main track of an electric railway company, cannot be extended so as to prevent her from objecting against the subsequent laying and maintenance of a switch, in the absence of other facts and circumstances which operate as an estoppel with respect to such switch. The facts that the switch is necessary to the operation of the main line, and that power is conferred upon the company to lay switches by its charter and the franchise granted by the county commissioners, are, in such case, immaterial.

2. ELECTRIC RAILWAY COMPANY MAY EXTEND TRACKS AFTER TIME LIMIT, HOW AND WHEN.

   The fact that the time limit has expired within which an electric railway company, under its franchise from the county commissioners, was to have its line completed and in operation, will not prevent the company from thereafter extending its road to new property under condemnation proceedings, or other rights lawfully acquired.

3. SWITCH IN PUBLIC HIGHWAY AN ADDITIONAL BURDEN.

   An additional burden is imposed upon a public highway by the laying of a switch therein by an electric railway company; and this is so, irrespective of whether or not such company is a mere "paper" company, or one already in operation over such highway.

4. LAYING OF RAILWAY SWITCH IN HIGHWAY ENJOINED; REMOVAL COMPELLED BY MANDATORY INJUNCTION.

   The laying of an electric railway switch in a public highway without the consent of an abutting owner, and contrary to the provisions of Sec. 5, Art. 13 and Sec. 19, Art. 1 of the Ohio constitution, will be enjoined at the suit of such owner, in the absence of facts and circumstances which work an estoppel; and where such switch has already been laid, a mandatory injunction will issue to compel its removal.

APPEAL.

**D. J. Nye** and **C. G. Washburn,** for plaintiff.

**E. G. & H. C. Johnson** and **C. W. Collister,** for defendant.

MARVIN, J.

The case of Minnie C. Chambers against the Cleveland and South Western Traction Company and others, comes into this court by appeal from the judgment of the court of common pleas.

The facts are that the plaintiff owns a farm in the township of Ridgeville in Lorain county, lying on both sides of a public road, and having a frontage along said road, or rather extending from east to west a distance of more than five hundred feet, through which the road runs. The plaintiff owns the fee of said road, subject to the rights of the public to use the same for a highway.

In 1895 a predecessor of the defendant company, being incorporated for that purpose, and having obtained from the commissioners of the county a franchise therefor, constructed an electric railroad, passing along this road through the plaintiff's farm, and extending at that time from the city of Cleveland to the city of Elyria.

The certificate of incorporation of the company which constructed the road, authorized the construction of an electric railroad, or a railroad using electricity for motive power with single or double tracks, with such side tracks, turn-outs, offices, depots, shops, telegraph lines, telephone lines, switches, poles, wires, devices, and all other necessary appliances for the operation of an electric railroad. And also authorized the railroad, or provided that it was organized and formed for "the purpose of transporting passengers, packages, express matter, United States mail, baggage and freight over and upon said railroad."

It was also formed "for the purpose of generating electricity by steam or water power, and the selling of the same for light, heat and power purposes, and the owning of all necessary real estate to carry out said objects."

The franchise granted by the commissioners provided:

"That the railroad must be constructed to the satisfaction of the county commissioners, with a single track, with all suitable and convenient side tracks, switches, turn-outs, turntables and stations. And have the right to construct and maintain all necessary wires to connect its feed wires with adjacent property along the route herein petitioned for, necessary to supply light, heat or power to such adjacent property and all other things necessary to operate a first-class street railway with inanimate power other than steam; poles for said railway to be located on the opposite side of the track from the traveled roadway, except when

it may be necessary to locate a double line of poles at opposite sides of the street, such location to be decided by the commissioners.''

It also provided that said railway might be used ''for the transportation of passengers, baggage, freight, express matter and United States mail.''

Along this highway upon the plaintiff's premises a main track was built in 1895, on the south side of the traveled roadway. Plaintiff gave no express consent to the construction of the road, nor did she make any objection or protest to the construction of said main track, and the same has been operated from 1895 or 1896 up to the present time.

In October 1903, the defendant in the night time, commenced putting in a switch on the south side of this main track, along the highway running through the premises of the plaintiff. Immediately upon the commencement of the work, or immediately upon notice being received by the plaintiff, which was almost immediately after the work began that night, she protested and denied the right of the defendant to construct this switch, and did all in her power to prevent the construction of the switch. She sought for an injunction from the court as soon as she could, to have the work stopped.

The switch has been completed, and is something more than three hundred feet in length across her premises in the road, and the company is now operating that switch. The plaintiff prays that the defendant be enjoined from operating the switch, and by a mandatory order be required to remove the switch which has been put down.

As has been said, no consent of any kind has been given by the plaintiff to the construction and operation of this railroad, except her silence in letting the main track be constructed and operated.

Does this carry with it consent to the construction of this switch? On the part of the defendant it is said that it carries with it the right of the construction of this switch, because the articles of incorporation and the franchise from the county commissioners, under which the defendant is acting, authorized the construction of side tracks, turn-outs, switches, etc., as they should be necessary for the operation of the road. It is said that this switch is necessary for the proper operation of the road, and that therefore when she consented by her silence that the main track be laid along her premises she impliedly consented that such switch, turn-out or other device as should be necessary for the operation of the road should be constructed. If that is so, it would seem to carry with it consent on her part, if it became necessary to put up a power

house on her premises which by its charter and by its franchise it was authorized to put up at all necessary places.

If this plaintiff had consented in writing that the main track might be built along the highway through her premises, and acting upon that the defendant had constructed this main line through her premises along this road, it can hardly be claimed that that consent would have given them the right whenever it became necessary for the proper operation of the road, to lay a switch or any additional track or put in any additional thing other than was necessary for the operation of that main line along this road. Is it possible that by standing by and consenting by silence that this main line be constructed and operated, she gave a broader consent than if she had given in writing a consent that exactly that thing might be done? It seems to answer itself. It seems difficult to understand how it can be said that one by tacit consent, in seeing the work done upon her premises, gives a greater consent, gives to the corporation laying the track a greater right, than would have been given if consent to do exactly the same thing had been given in writing.

It is urged on the part of the plaintiff that since by the franchise it is provided that the road shall be completed and in operation by a given date, which time has long since past, that under the franchise no switch could be laid anywhere that was not laid at the time the original main track and switches were laid.

We think the case of Toledo & W. Ry. v. Daniels, 16 Ohio St. 390 answers that, and answers it against the plaintiff. There it was held that the railroad company, a steam railroad company, which had a franchise to put in a railroad with necessary turn-outs, switches, etc., in the city of Toledo, might condemn property and extend its turn-out up to a certain mill property. But we think also that that same case clearly shows that in order to make such extension the company must acquire right to the property, if it is property that it is taking.

We are cited to the case of Cincinnati & Ind. Ry. v. Zinn, 18 Ohio St. 417, as affirming the proposition laid down in the case of Toledo & W. Ry. v. Daniels, *supra*. It simply says, "That the other questions involved in this case are determined by the case of the Railway Company v. Daniels." Nothing more is said about it.

Numerous authorities are cited and fully sustain the proposition, that where one stands by and makes no objection to the use of his property by a railroad company or other public corporation, whereby large sums of money are expended, he cannot be heard later to complain of

such use. But the cases cited in the brief of defendant, and so far as we know everywhere, the authorities go no further, than that one has given consent that the thing be done which he has stood by and permitted to be done, and he cannot later be heard to complain.

Considerable was said in argument that the putting down of this switch was not putting an additional burden upon the property, and authorities are cited in support of that proposition. Those authorities, some of them at least, were cited and read over to two members of this court sitting as judges in chambers, and convinced us that this was not an additional burden, and we so held. But that case went to the Supreme Court, (the case of Schaaf v. Railway, 66 Ohio St. 215 [64 N. E. Rep. 145]), and the Supreme Court said we were wrong; and now without regard to what the authorities are outside of Ohio, the latest authority of the Supreme Court of Ohio on that subject is the case before mentioned.

It was urged here in argument that the two cases are not alike, and some stress was laid upon the proposition that in the case of the Medina railroad it was a paper railroad only, never had been built; but it was to prevent the building of it along the premises of the plaintiff in that case, because it would be a burden upon his property, that the suit was brought. And the court said, in the first paragraph of the syllabus:

"The construction and operation of an interurban railroad laid with T rails, entirely on the side of a public highway next to the abutting improved farms owned and occupied by the plaintiffs, and entirely between their lands and the traveled part of the highway—the company having authority to run an unlimited number of cars and trains for the carrying of passengers, and the transportation of freight, express matter and government mail, is an additional burden on the public highway and obstruction to, and interference with the plaintiffs' easements and rights therein, not substantially different from those that are imposed by the construction and operation of steam railroads, under like conditions."

Then follows the construction and operation of an electric plant, etc.

But that language laid down as the law in the syllabus it seems to us settles this case, and settles it in favor of the plaintiff. An additional burden has been imposed upon the plaintiff by the laying of this switch.

It is said she has a complete remedy at law. It is no more true that she has a complete remedy at law than she would have a complete remedy at law if they went through one of her fields, and the constitution has disposed of that question, by providing as it does in Sec.

Lorain County.

5, Art. 13, as to the taking of a right of way. And in Sec. 19, Art. 1, providing that private property shall not be taken for public use until compensation has first been made in money, or a deposit of money made.

We think it follows that as the defendant has taken the property, that is, has by putting an additional burden upon the highway taken the property of the plaintiff or established a right of way across her premises, without having first had the value of that property right in her determined by a jury or having paid it or deposited it, the injunction should and must be allowed.

Now this track is laid down, and the order will be that it be removed, unless within ninety days from this date the defendant shall have by some proper means obtained the right from the plaintiff to construct and operate this switch.

**Hale** and **Winch, JJ.,** concur.